IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL McKENNA, et al., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 07-CV-110 |

**MEMORANDUM AND ORDER**

Plaintiffs have filed this action alleging violations of their civil rights by the City of Philadelphia, Police Officer Andrew Jericho, Sergeant Mark Stoots, and Captain Deborah Kelly. Plaintiffs claim the defendant police officers used excessive force in making an illegal arrest and that the City condones such conduct by its police officers. The City has filed a motion for summary judgment on all claims asserted against it.

1. Factual Background

On January 23, 2005, there was a large gathering of people at the intersection of Frankford and Cottman Avenues celebrating the Philadelphia Eagles' conference championship victory. Timothy McKenna, along with his father Michael, mother Beth, and aunt Patricia Sullivan, were participants in the celebration and were videotaping the event. At some point in the evening, Officer Jericho arrested Timothy for disorderly conduct. Plaintiffs assert this arrest was without cause.

Michael, Beth, and Patricia witnessed the arrest and were engaged in various efforts to advise Officer Jericho, and later Captain Kelly,[1] that Timothy's arrest was unwarranted and that he was a minor who should not be transported to the district headquarters in a wagon with adult

---

[1] Captain Kelly was the officer in charge of the 15th District officers assigned to maintain control of the celebration.

prisoners. It is during this period that plaintiffs claim police officers at the scene used excessive force and specifically claim that Officer Jericho struck Patricia, Beth, and Timothy. Michael alleges he was struck by an unnamed highway patrol officer.[2] Plaintiffs allege that as Patricia was videotaping the "illegal arrest," Officer Jericho struck and broke Patricia's arm, and struck her in the abdomen with his nightstick. Plaintiffs allege that Timothy suffered back and neck injuries as the result of Jericho's use of excessive force to effectuate the arrest.

Despite the protests of the McKenna family, Captain Kelly directed the transport of Timothy to the 15th District for processing. Officer Jericho met the wagon at the District, escorted Timothy to a cell, and completed the paperwork incident to the arrest. Sergeant Stoots was the officer in charge of the 15th District that night. Plaintiffs assert that Stoots was aware that Timothy was a juvenile, and that he was improperly held and not immediately released to the custody of his parents upon completion of his paperwork.

2. <u>Standard for Summary Judgment</u>

The standard for summary judgment is well established. I must consider the evidence in a light most favorable to the non-moving party and, if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are critical issues. However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion.

The City asserts that plaintiffs have failed to elicit any evidence to demonstrate that the

---

[2] Efforts to identify this patrolman are ongoing.

City itself, through the implementation of municipal policy or custom, caused the underlying constitutional violation. *See Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978). When a §1983 claim is brought against a municipality, I must consider two issues: 1) whether the plaintiff's harm was caused by a constitutional violation; and 2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992). Because a municipality cannot be held liable under a theory of *respondeat superior* or vicarious liability, I must first determine "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). If there is no causal link, the municipality is not liable even if plaintiff's constitutional rights have been violated. *Collins*, 503 U.S. at 122.[3]

Plaintiffs claim they have "adduced evidence of a 'custom or practice' that led to the alleged constitutional violations at issue in this case. Plaintiffs also assert that they have evidence sufficient to establish that a "policymaker" such as the Commissioner and City Attorneys' Office has deliberately chose[n] a course of action that ignored the needs of persons such as plaintiffs." *Plaintiffs' Resp*. at 6.

The specific "custom or practice" challenged here is the City's failure to adequately train or supervise its police officers in the use of force and the proper way to make an arrest. In support of this claim, plaintiffs' point to what they describe as Officer Jericho's and Sergeant Stoots' "extensive diplomacy histories."[4] *See Plaintiffs' Resp*. at 3. Plaintiffs contend that the

---

[3] Unlike the plaintiffs, I do not read the defendants' motion to concede that there has been a constitutional violation. Rather, the City recognizes that there is no need to refute the claim of a constitutional violation if there is no causal link to a municipal policy.

[4] In context, it appears the plaintiffs are referring to the police officers' *disciplinary* histories.

officers' records include "findings of using excessive force, lying about the use of force, lying in general, creating false paperwork, failing to supervise or take police action and failing to write police reports," and still both Jericho and Stoots received satisfactory annual evaluations for their entire career with the City of Philadelphia.  From this, the plaintiffs conclude that "[t]he City condones lying by officer (sic), fabricating records, and using excessive force, and does so by agreeing to expunge this type of misconduct from an officer's personnel history, not requiring the offending officers to be retained (sic) in the areas of the misconduct, and having their actions overlooks (sic) or noted as 'satisfactory' by supervisors in the annual evaluations." *Id.* at 4.

    3.  <u>Discussion</u>

As previously stated, establishing municipal liability under *Monell* requires proof of an official policy or evidence of a municipal custom.  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *See Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. *Id.* at 156 (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Thus, custom may be established by proof of knowledge and acquiescence. *Id.* (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).  Under either theory of liability, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

    Plaintiffs pursue this action under the custom theory of liability.  In support of their claim,

plaintiffs rely on the past conduct of Officer Jericho and Sergeant Stoots as evidenced by their Internal Affairs Bureau records and annual evaluations.  Plaintiffs argue these records establish that "there is a custom or practice to condone the use of excessive force, lie about such and create false paperwork to facilitate the lying." *Plaintiffs' Resp.* at 6.  Plaintiffs contend these records show that the City has condoned the misconducts of these officers and acquiesced in the behavior but they have presented no evidence that an official who has the power to make policy is responsible for acquiescence in a well-settled custom.  In fact, these records show just the opposite.

First, I note that many of the complaints against the officers were unfounded and thus would lend no support to the instant claims.  Second, in the instances where misconduct was established the officers were punished, contrary to the plaintiffs' assertion that such conduct was condoned or ignored.  Finally, I am not persuaded that the reversal of a disciplinary action following a union grievance is in any way evidence of approval of the conduct by city officials.  These records establish a serious effort on the part of the police department and the City to insure that Philadelphia police officers act in an appropriate and lawful manner and are punished when their conduct deviates from that which is expected and demanded.  No fact-finder could reasonably conclude otherwise.

The disciplinary records of these officers are also insufficient to establish a failure to properly train or supervise and plaintiffs have not identified any specific training procedures that are inadequate.  *See City of Canton*, 489 U.S. at 389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is

actionable under §1983."). Further, evidence of a particular officer's inadequate training is not sufficient to establish municipal liability because the officer's shortcomings may have resulted from factors other than a faulty training program and even adequately trained officers occasionally make mistakes. *Id.* at 390-91.

As discussed, no evidence has been presented by plaintiffs to establish the knowledge of any municipal policymakers, nor have they presented any evidence concerning the type of training programs currently in place and how the training is deficient. Instead, plaintiffs make a broad assertion that the training is deficient without any reference to what the present use of force training is, in what ways it is deficient, and how that deficiency led to the alleged constitutional violation in this case. Without such evidence, the claims against the City cannot survive summary judgment. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL McKENNA, et al.,            :      CIVIL ACTION
                                    :
            v.                      :
                                    :
CITY OF PHILADELPHIA, et al.        :      NO. 07-CV-110

# ORDER

AND NOW, this    15th    day of August, 2007, IT IS HEREBY ORDERED that the defendant City of Philadelphia's motion for summary judgment (Dkt. # 20) is GRANTED and all claims against the City are DISMISSED with prejudice.

                        BY THE COURT:

                         /s/ J. William Ditter, Jr.
                        J. WILLIAM DITTER, JR., S.J.