## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL MCKENNA, et al.** | : | **Civil Action** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | **No. 07-110** |

**Ditter, J.**                                          **September 30, 2008**

### OPINION AND ORDER

This is the first paragraph of Timothy McKenna's fee petition:

Plaintf [sic] for the facts and argument [sic] of law made in the mocong [sic] papers and supporting memorandum of law for an award of counsel fees, award of litgation [sic] costs, delay damages and post judgemnt [sic] interest under Fed. Rule of Civil Pro. 59(e), 42 USC [sic] 988 and 28 USC [sic] 1920, submits the proposed order shouold [sic] be entered as the Court's order; and in support of same, plainitff [sic] im [sic] McKenna though [sic] counsel says:  . . .

This is Timothy McKenna's caption for his fee petition:

**PLAINTIFF'S PETITION FOR AN AWARD [OF] ATTORNEY FEES PURSUANT TO 42 U.S.C. 1988 AND TO FIX COSTS PURSUANT TO 28 U.S.C. 1920 AND AWARD INTERETS [sic] AND DELAY DAMAGES**

(Doc. 56, p. 1.)[1]

I have quoted accurately.  To a caption which omits a word and misspells a word,

plaintiff's counsel, Brian M. Puricelli,[2] adds an opening sentence which features eleven errors,

nine misspelled words and two citation errors.

McKenna, having been awarded $150,000 in damages from Officer Andrew Jericho, now

---

[1] For ease of reference and the sake of clarity, I shall refer to the filings in this case by the document number as assigned on the court docket.

[2] The petition for counsel fees, costs, and delay damages are properly brought in the name of Timothy McKenna, the prevailing plaintiff.  Nonetheless, its errors are the responsibility of counsel.

petitions for attorneys' fees.  McKenna attaches to his petition a proposed order, the first

paragraph of which contains two misspellings but interestingly enough goes on to say:

> **IT IS FURTHER ORDERED** that in addition to the $600,000.00
> Judgment that was entered for Plaintiff and against Defendants Joseph Sullivan,
> Carl LaTorre and Thomas Kelly a Judgment is entered against Joseph Sullivan,
> Carl LaTorre and Thomas Kelly in the amount of $ _____ for reasonable attorney
> fees and in the amount of $ _____ for Costs.

(Doc. 56, p. 5.)

Yes, it is suggested that I sign an order which recites the wrong amount of McKenna's

judgment and orders three strangers to this action to pay attorneys' fees and costs.

McKenna has promiscuously sprinkled misquotations as well as errors of omission,

commission, and abbreviation through the remaining 20 paragraphs and the wherefore clause of

his petition.  A sampling, without addressing punctuation miscues, will suffice:

- Paragraph 2 refers to the defendant, whose first name is Andrew, as Richard Jericho and in paragraph 3 as Ritchard Jericho.  Paragraph 3 also contains a misspelled word.

- Paragraph 5 cites to "Rule of Court and Local Civil procedural [sic] Rule 42(d)."  What he means is Fed. R. Civ. P. 54(d) and Local Civil Rule 54.1.

- Paragraph 6 describes "reasonable fees as counsel for the prevailing party were withint [sic] the Philadehia [sic] metro market place for attoreys, [sic] and rates that have already been approved for counsel by the Ubited [sic] States District Court for the Eastern District of Pensylvania [sic]."

- In Paragraph 7, McKenna contends that "Plaintiff [sic] Counsel's [sic] fees are reasonbale [sic] and the work done for the fee was reasonable and necessary for the result achived [sic] . . . ."

- Paragraph 12 misquotes 28 U.S.C. § 1961.  Subsection (a) was amended on December 12, 2000.

- Paragraph 13 flips a Supreme Court opinion over by referring to a dissent by Mr. Justice White as a concurring opinion.

•   Paragraph 14 has five misspelled words and an incomprehensible sentence.

•   Paragraph 16 has one misspelled word and now, instead of calling Andrew Jericho "Richard" or "Ritchard," names him "Anthony."

•   The first sentence of Paragraph 17 repeats the intended meaning of paragraph 16 and like a carousel, winds up where it started.[3]  It contains two misspellings, but there is only one misspelled word in the second sentence.

•   With some effort and imagination, the meaning of Paragraph 19 can be ascertained, and the same is true of Paragraph 20.

•   The final paragraph setting forth his prayer for relief features only two misspelled words.

(Doc. 56.)[4]

All of this reaches a climax with the assertion that Mr. Puricelli should be paid $171,040 for 427.6 hours of work at $400 an hour, plus an additional $10,300 for 41.2 hours for the work of Mr. Kravitz[5] at the rate of $250 an hour – a total of $181,340.  For the preparation of the fee petition alone, Mr. Puricelli claims 22 hours at a rate of $400 per hour for a cost of $8,800, and Mr. Kravitz claims 2.2 hours at a rate of $250 per hour for a cost of $550.[6]

---

[3] "The City does not indicate it will not satisfy the Judgment, and rightfully so, as under the Police Collective Bargaining [sic] Agreemnt [sic] and state law, the City must indemnify its employee police officers, such as defendant judgment debtor Jericho, and satisfy the judgment." (Doc. 56, ¶ 17.)

[4] Three days after the first fee petition was filed, McKenna filed an amended fee petition which corrected most of the original's misspellings.  However, the problems with Officer Jericho's name persisted, the errors in case and statute citations remain, words are still missing, and some assertions are still challenging.  In addition, paragraph 20 has been changed so that the amount of damages awarded by the jury is now said to be $15,000 instead of the actual award of $150,000.  In short, the amended fee petition is better but not good.  (Doc. 57.)

[5] Mr. Kravitz is Theodore M. Kravitz, Esquire.  On September 20, 2007, Mr. Puricelli declared he is a partner in the law firm of Kravitz and Puricelli located at 691 Washington Crossing Road in Newtown, Pennsylvania. (Doc. 56-3, p. 2.)  The next day, September 21, 2007, Mr. Puricelli declared he is a "solo practitioner" at the same address.  (Doc. 56-4, p. 2.)  As Adam said to Eve when they were leaving the Garden of Eden, "We live in a changing time."

[6] I shall consider the attorneys' fees requested for preparing the plaintiff's reply separately and those fees are not included in this total.

The City of Philadelphia, on behalf of itself and the other named defendants, objects to the fee petition and suggests an appropriate award would be $19,506.08.  The City also argues that McKenna's request for interest and delay damages should be denied.

First, the City focuses its argument on the plaintiffs' failure to prevail on all but one of their claims.  Only one of four plaintiffs had any success at trial and it was limited to one of four claims and against one of five defendants.  The City seeks deductions for time spent on the numerous unsuccessful claims that did not reach the jury, including all claims against the City, the motions *in limine* on which the defendants prevailed, as well as the claims dismissed on the defendants' Rule 50 motion.  The City also challenges the reasonableness of Mr. Puricelli's hourly rate, the accuracy of his calculations, and the reasonableness of the hours claimed.  As to the quality of the work, the City asserts:

> In the instant matter, Mr. Puricelli's written work, including the complaint, motions, jury instructions, and the instant petition for attorneys' fees, is careless, vague, ambiguous, unintelligible, verbose, and repetitive.  Mr. Puricelli's written work required defendants, and probably the Court, to decipher plaintiff's [sic] claims, to the point that, at the commencement of trial, defendants and this Court were still unsure as to all of the plaintiff's [sic] claims.  In fact, plaintiff's [sic] own jury instructions did not address all of the claims that were contained in his complaint.

(Doc. 60, p. 11.)

In his reply, McKenna argues the City had no basis to object to the fee petition and requests additional fees to Mr. Puricelli for 18.3 hours and to Mr. Kravitz for 4.0 hours spent for the preparation of the reply.  (Doc. 61, p. 19; Doc. 61-2.)

Unless the challenge raises a factual issue, a party objecting to a fee request may do so by a brief that is sufficiently specific to put the fee applicants on notice and provide them a fair

opportunity to defend their petition.  *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir. 1989).  Further, I may reduce a requested fee with respect to matters within my personal knowledge.  *Id.* at 719.

Against this backdrop, I consider the fee petition.

# I.  THE LODESTAR

A prevailing party in a civil rights action is entitled to costs and reasonable attorneys' fees, that is, fees that will be enough to attract competent counsel without producing a windfall to the lawyers.  In these cases, the court uses the lodestar formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate.  While in ordinary circumstances, the court should assume the lodestar is correct, it may be adjusted where there is reason to do so.  In reviewing a fee application, I am charged with conducting a thorough and searching analysis – a line by line examination of the billing records in question.

## A.  The Number of Reasonable Hours

The lodestar's first component is the number of hours reasonably expended by counsel.  In that regard, I shall review the hours claimed for the preparation of the complaint, the proposed jury instructions, and the fee petition, the three requests I find the most egregious.[7]

### 1.  The Complaint

In his memorandum in support of his motion for attorneys' fees*,* Mr. Puricelli says he "has considerable experience in the law on excessive use of force and arrest . . . [and] he has successfully litigated civil rights cases . . . .   For example he in 2006 successfully litigated a [sic]

---

[7] I understand the difficulties facing the sole practitioner, and I recognize that even the best attorney or jurist may make an occasional mistake in his or her writings; however, the mistakes in the plaintiffs' pleadings are so monumental and pervasive that they give new strength and vitality to the word careless.

excessive force case against Philadelphia Police Officers . . . ."[8]  (Doc. 56-2, pp. 13-14.)

I interpret these assertions to mean that counsel is not only a general expert in civil rights litigation but specifically expert in cases involving retaliation, false arrest, and the use of excessive force by the police – exactly the same theories of recovery advanced in this case.

With that in mind, I turn to the complaint he filed in this matter.  It consists of 56 mis-numbered paragraphs[9] and is replete with misspellings,[10] errors of grammar,[11] and punctuation lapses[12].  It is verbose and repetitive.  While the complaint's spelling, grammar, and punctuation are imaginative and novel, its legal theories – retaliation, false arrest, excessive force, and supervisory responsibility – are not.  They are case-hardened, motion-tested, time-established principles and obviously well-known to an expert in civil rights litigation.

After more than three hours with his clients to discuss the facts, counsel and his partner each spent 1.3 hours to discuss "legal theories and strategies," followed by their each spending

---

[8] In his Declaration pursuant to 28 U.S.C. § 1746, Mr. Puricelli also recites his success in *Charles Bucceroni v. City of Philadelphia,* No. 03-CV-6371, a case involving excessive force and retaliation, and in addition, these three cases involving retaliation:  *John Devore (II) v. City of Philadelphia,* No. 04-CV-3030, *Marcellus Robinson and John Thompson v. City of Philadelphia,* No. 03-CV-6372; and *John Devore (I) v. City of Philadelphia,* No. 00-CV-3598.  (Doc. 56-3, pp. 2-3.)

[9] There are two paragraphs numbered 2, two numbered 3, and two numbered 4.  There is no paragraph 17.  There are two paragraphs numbered 24 and two numbered 25.  There is no Count I but there are two Count IIs.

[10] For example, see paragraphs 4 (the second one), 9, 11, 12, 20, 21, 24 (the first one), 37, 39, 42, 47.  The name of one defendant, Sergeant Mark Stoots, is misspelled in paragraphs 16, 18, 19, 20, and five times in paragraph 26.

[11] For example, see paragraphs 1, 3a., 3b. (the second paragraph 3), 29.  There are numerous occasions where a word is correctly spelled but incorrectly used.  For example, see paragraphs 12, 14, 21, 22, 24, 27, 31, 32, 35, 47.

[12] Just a few should suffice.  See paragraphs 1, 2 (the second paragraph 2), 6, 14, 15, 19, 21, 46, 47, 48.

1.2 hours in legal research,[13] an additional hour to review the case law, and 3.6 hours to review client papers.  (Doc. 56-3, p. 8.)

Four days later, counsel spent 10.4 hours drafting the complaint, 3.5 hours the next day on the complaint, and then 3.1 hours editing and sending it to his partner for review.  The next day, each of them spent 1.1 hours conferring on "form and facts."  That same day, 3.6 hours were required to review the complaint with the client.  Finally, a half hour was needed to make changes and conform the complaint for filing.  (Doc. 56-3, p. 8.)  The total is 32.7 hours for lead counsel and 3.9 hours for his partner to do a slipshod job preparing a complaint that instead of being simple is convoluted, instead of being concise is protracted, and instead of being direct is circuitous.  The mind is boggled by the thought of how many hours might have been required had such experienced civil rights counsel embarked on a venture where they had never gone before.

The complaint was brought on behalf of four plaintiffs, only one of whom, Timothy McKenna, was successful.  The 56-paragraph complaint could have sufficiently set forth all the plaintiffs' claims in half that number.  Rather than asserting the relevant facts of the incident, the section entitled "FACTS" states the various claims the plaintiffs intend to pursue, claims that are then repeated as individual counts in the complaint.  The facts are scattered throughout the complaint and often repeated even when already incorporated by reference.

Bearing in mind that Mr. Puricelli is a civil rights expert – and is billing at an hourly rate reflective of his expertise in cases involving claims for false arrest, excessive force, and retaliation – I will allow the following so far as the preparation of the complaint is concerned:

---

[13] It is an interesting coincidence that two experts in civil rights law spent exactly the same amount of time doing legal research for the crafting of a commonplace complaint.

| | | |
|---|---|---|
| Oct. 31, 2006 | Meet client re conference over facts | 3.4 hours |
| Nov. 5, 2006 | Legal research | 1.2 |
| Nov. 6, 2006 | Review client papers for complaint drafting | 1.0 |
| Nov. 10, 2006 | Draft complaint | 2.0 |
| | **Total** | **7.6 hours** |

_____I am not allowing any time for intra-counsel consultations or partner's work, client review of the complaint, or anything for any other time claimed reviewing and conforming the complaint. If indeed the complaint was reviewed by anyone, he or she should not be compensated for shamefully inadequate work.

"Excessiveness of time spent in light of an applicant's expertise is a legitimate reason for reducing a fee award." *Bell,* 884 F.2d at 721. A total of 7.6 hours for the drafting of a false arrest, excessive force, false imprisonment, and retaliation complaint by a civil rights expert is more than generous. In computing the reasonable hours for the lodestar, I am therefore deducting 25.1 hours from the time claimed for Mr. Puricelli (32.7 - 7.6), and 3.9 hours for Mr. Kravitz.[14]

### 2. Proposed Jury Instructions

I note verbatim the following claims of Mr. Puricelli as to how 34.8 hours were spent for the preparation and review of proposed jury instructions:

_____

[14] This reduces Mr. Puricelli's total claimed hours to 402.5 (427.6 - 25.1) and Mr. Kravitz's hours to 37.3 (41.2 - 3.9).

|  |  | TMK | BMP |
|---|---|---|---|
| **May** | | | |
| 13 | Work on conforming Jury inst to case facts and parties | | 11.6 |
| 14 | Cont working on jury instructions | | 4.4 |
| 21 | Jury instruct research, third cir model and state model | | 2.3 |
| 25 | TMK review of proposed jury instructions | 2.7 | |
| 26 | Confer w/TMK re: Jury instructions | 1.4 | 1.4 |
| 27 | Edit charge and verdict form questions | | 3.8 |
| **June** | | | |
| 5 | Email to Straw.  proposed verdict form | | 0.2 |
| 6 | Email from Straw, re: any opposition to proposed jury inst | | 0.1 |
| 10 | Review of jury instruction and pretrial submissions by TMK | 2.3 | |
| 11 | Review, format and file pretrial submission: | | |
| | proposed jury instructions | | 0.5 |
| | verdict sheet, wit and exhibit lists | | 0.2 |
| **Sep** | | | |
| 2 | Review jury instructions and case law for elements and court order compliance for trial submissions. E.g. proposed jury questions and instructions.  Witness and exhibits | | 3.7 |
| 6 | Tx to Straw re: Pltfs proposed model charges state and federal | | 0.2 |
| | **Totals** | **6.4** | **28.4** |

Mr. Puricelli's first work on his proposed jury instructions apparently followed his downloading the model forms approved by the Third Circuit.  Thereafter, his efforts were to fit the model instructions to this case, have his partner review what he had done, and confer with his partner about the final draft that was submitted to me on June 11, 2007.  As with the complaint, this final draft is marked by errors of omission, commission, inclusion, exclusion, and duplication.

Trial did not begin until September 10, 2007.  In the meantime, on July 5, I had ruled on the parties' respective motions *in limine*, and on August 15, 2007, had granted the City's motion

for summary judgment on the plaintiffs' *Monel* claim.  (Doc. 33; Doc. 35.)  In addition, a John

Doe defendant had been identified as Sergeant Jonathan Josie.

On September 2, 2007, Mr. Puricelli asserts he spent 3.7 hours in reviewing jury

instructions and other submissions for compliance with my orders but no amendment or change

to the instructions submitted in June was provided to reflect the changes in the issues that would

be tried.  Although I had granted summary judgment on plaintiffs' *Monel* claim, the City of

Philadelphia is referred to as a defendant on numerous occasions.  (Doc. 21-3*,* pp. 2, 4, 5, 8, 16-

18.)  In addition, it would have been wrong to give the proposed *Monel* charge.  (Doc. 21-3*,* pp.

12-14.)  Not only was Sergeant Josie not added to the defendants named in the jury instructions

but Officer Murphy remained.  There never was an Officer Murphy in this case – not in the

complaint and not in any motion.  Officer Murphy was not deposed or listed as a witness.

Nevertheless, his or her name appears in the points for charge as a defendant on numerous

occasions.  (Doc. 21-3, pp. 24, 25, 39-40; Doc. 21-4, pp. 1-2.)  Officer Murphy also appears on

the plaintiffs' proposed verdict sheet four times.  (Doc. 21-6*,* pp. 1-2.)[15]

Mr. Puricelli claimed time to interview and prepare his clients.  Despite the fact that there

was no evidence that Michael McKenna, Beth McKenna, or Patricia Sullivan had been stopped

or arrested,[16] I was asked to charge as though they had been.  (Doc. 21-3, pp. 24-25.)

I was asked to use the "scales of justice" illustration twice, (Doc. 21-2, p. 14; Doc. 21-3,

p. 2), and to charge twice that proof beyond a reasonable doubt was not the proper standard in a

---

[15] To this day, I have no idea who Officer Murphy is or how he or she may have been involved in this case.
I suspect this is a "cut and paste" error that calls into question any time spent conforming, reviewing, and editing the
plaintiffs' pretrial submissions.  However, if Officer Murphy was ever a potential defendant in this case, he or she no
longer was one by the time the proposed jury instructions were filed.

[16] All three had been deposed on April 12, 2007.

civil case (Doc. 21-2, p. 15; Doc. 21-3, p. 3).  It was suggested that I charge twice on assault and twice on battery.  (Doc. 21-3, pp. 39-40; Doc 21-4, pp. 1-2.)  Outrageous conduct was the subject of two requests.  (Doc. 21-3, p. 41; Doc. 21-4, p. 3.)  Counsel felt that two charges on malicious prosecution and two on abuse of process would be helpful to the jury.  (Doc. 21-3, pp. 43-44; Doc. 21-4, pp. 5-6.)  There was a third request to charge on both in still different language.  (Doc. 21-3, pp. 28-30.)

I was asked to define the meaning of clear and convincing evidence but there was no request that the jury be told to use that standard of proof in the remainder of the proposed points and no reason occurs to me as to why I should have done so.  (Doc. 21-2, p. 16.)

I was asked to charge about the meaning of "under color of law."[17]  (Doc. 21-3, pp. 5-6.)  There was no need to do so because there was simply no issue raised about who the defendants were and what they were doing at the times in question.  In fact, part of the requested charge on this matter included telling the jury that this was not a disputed matter.  (Doc. 21-3, p. 7.)  The request to tell them – and then tell them to forget what I just told them – fits nicely with the plaintiffs' other points for charge.[18]

I was asked to give a cautionary charge about the proper use of information from police department records (Doc. 21-2, p. 18), despite having excluded any reference to these records in a prior ruling on a motion *in limine* (Doc. 33).

There were numerous grammatical mistakes involving nouns of the wrong plurality and

---

[17] This request included ten different ways a person might act under color of state law, none of which had the slightest thing to do with this case.

[18] It also contradicts Mr. Puricelli's objection to the defendants' proposed jury instructions that an unnecessary charge should not be given because it would only confuse the jury.  (Doc. 27, p. 3.)

verbs that were not attuned to the noun or nouns they accompanied.  (Doc. 21-2, pp. 4, 14; Doc. 21-3, pp. 5, 9, 7, 14, 12, 24, 31, 35.)  It was suggested that Ms. Sullivan should be referred to as "Sullivan's" on at least five occasions.  (Doc. 21-3, pp. 10-12, 14, 32.)

Sergeant Stoots' name was a constant challenge.  Usually he was called "Stoops" but he was also "stops," "stoops," and even "Styoops."  (Doc. 21-3, pp. 2, 4, 9, 10, 16, 31-38.)  He was also mis-named on the proposed verdict sheet.  (Doc 21-6, pp. 2-4.)

There were several instances of nonsense:

•   Because [City of Philadelphia, Andrew Jericho, Mark Stoops [sic] and Debora [sic] Kelly] were an official of [the city of Philadelphia] . . . ."  (Doc. 21-3, p. 7.)

•   "First: [Officer Jericho intentionally [grabbed him by the back collar are, the Timothy McKenna to the Ground . . . ."  (Doc. 21-3, p. 26.)

•   "or creates a hazardous or physically offensive condition by any cat . . . ."  (Doc. 21-3, p. 29.)

•   "to be separated from one another as long a could be under police department policy]." (Doc 21-3, pp. 31, 35.)

I conclude that Mr. Puricelli's proposed jury instructions were a mish-mash of misdirections, misnomers, and mistakes.  Mr. Puricelli's claim that I should order the City of Philadelphia to pay him $11,360 for it is denied.  What Mr. Kravitz accomplished by his review of Mr. Puricelli's work and their conferring is a vast mystery.  The request that he be paid $1,600 for it is denied.  Points for charge are intended to aid the court in the discharge of one of its most important trial functions.  These points were a hindrance, not a help, and were worth nothing.  I refuse to order any payment for them at all.  In computing the reasonable hours for the lodestar, I am therefore deducting 28.4 hours from the time claimed for Mr. Purcelli and 6.4 hours for Mr.

Kravitz.[19]

### 3. The Fee Petition and its accompanying Memorandum of Law

I have already reviewed the fee petition and its botches.  I now consider Mr. Puricelli's

request for fees incurred in the preparation of that petition and the memorandum of law that

supported it.  This is what he claims:

| Sep | | TMK | BMP |
|---|---|---|---|
| 16 | Legal research fee, market rate, and costs allowed | | 2.3 |
| 17 | Conf w/TMK, Re: trial result, post trial activity, fee pet, mol and costs | 0.6 | 0.6 |
| 17 | Draft fee mo, MOL and legal research on delay damages and interest | | 6.7 |
| 18 | Edit Fee Mo and MOL | | 5.8 |
| 18 | Prep Bill Cost, accounting of copies, speak with atty Oakley: Aff and Times send fee mo and mol to TMK for review | | 3.2 |
| 18 | TMK review of fee motion and MOL | 1.3 | |
| 18 | Prep affidavits of TMK and BMO for fee and costs | | 1.6 |
| 19 | TMK Review affidavits of BMP and TMK | 0.3 | |
| 19 | Edits to Fee Mo, MOL and Affs and final review of Costs | | 1.2 |
| 21 | Format mo. Mol, Bill costs, Affs and file: Fee Pet. MOL. Exhibits and Bill Costs | | 0.6 |
| | **Totals** | **2.2** | **22.0** |

I will allow nothing for the preparation and review of the fee petition.  It is a cascade of

carelessness, confusion, and cursoriness.

The total hours are not separately stated for the petition and memorandum.  It does not

matter, for I will allow nothing for the memorandum.

In almost every detail, argument, contention, and citation it is the same as the

memorandum of law Mr. Puricelli submitted in *Bucceroni v. City of Philadelphia,* No. 03-CV-

6371 (E.D. Pa. 2003) (Doc. 95-2).  Most paragraphs have been lifted verbatim, the same

---

[19] This reduces Mr. Puricelli's hours to 374.1 (402.5 - 28.4) and Mr. Kravitz's hours to 30.9 (37.3 - 6.4).

typographical errors appear in both,[20] and the same bungled case quotations and same case-name errors are found in both[21].  A sentence is repeated in both memoranda.  (Doc. 56-2, p. 17, lines 2-3; Doc. 95-2, p. 18, lines 18-19.)   The comparison of the amount of the judgment to the amount requested for attorneys' fees in *Bucceroni* has made its way into the petition before me.[22]  (Doc. 56-2, p. 16; Doc. 95-2, p. 18.)  In addition, both assert that time was spent retaining experts such as medical doctors and a psychologist (Doc. 56-2, p. 3, line 14; Doc. 95-2, p. 2, line 15), but Mr. Purcelli does not list any time in *McKenna* for consulting with any doctors or a psychologist and no expert testimony was offered at trial (only medical bills were entered into evidence).  Even two pointless sentences have been repeated.[23]

In computing the reasonable hours for the lodestar, I will therefore deduct 22 hours

---

[20]   The following shows instances of identical typographical errors:

| *McKenna Mem.* (Doc. 56-2.) | *Bucceroni Mem.* (Doc. 95-2.) |
| --- | --- |
| – p. 3, line 15 | – p. 2, line 19 |
| – p. 4, line 10 | – p. 3, line 4 |
| – p. 7, line 2 | – p.10, line 11 |
| – p. 13, line 21 | – p. 15, line 21 |
| – p. 16, line 13 | – p. 18, line 6 |

[21]  The following are examples of identical but erroneous case names and misquotations:

| *McKenna Mem.* (Doc. 56-2.) | *Bucceroni Mem.* (Doc. 95-2.) | |
| --- | --- | --- |
| – p. 6, starting at line 8 | – p. 8, starting at line 4 | (case name) |
| – p. 7, starting at line 11 | – p.10, starting at line 20 | (3 errors) |
| – p. 17, starting at line 14 | – p. 19, starting at line 6 | (case name and 3 errors) |
| – p. 18, starting at line 5 | – pp. 19-20, starting at line 23 | (2 errors) |
| – p. 19, starting at line 7 | – p. 20, starting at line 16 | (6 errors) |

[22]  Although the judgment in *Bucceroni* was $600,000, in both that memorandum and the McKenna memorandum, the plaintiff's judgment is stated to be "$6000,000.00."  (Doc. 56-2, p. 16, lines 22-23; Doc. 95-2, p. 18, lines 15-16.)  Further, the argument that the fees are reasonable because they do not exceed the judgment is not relevant to this case because the fees requested by Timothy McKenna do exceed the jury's verdict.

[23]  "[T]he fee is not to be reduced simply because the lack of success on all claims was not achieved."  (Doc. 56-2, pp. 18-19, starting at line 25; Doc. 95-2, p. 20, starting at line 13.)   "[T]he plaintiff sued a number of police officers refused to reduce the fee award due to the unsuccessful claims."  (Doc. 56-2, p. 19, starting at line 14; Doc. 95-2, p. 21, starting at line 2.)

claimed by Mr. Purcelli and 2.2 hours claimed for Mr. Kravitz.[24]

### 4. The Reasonable Hours Component of the Lodestar

For the reasons I have stated, I conclude that the lodestar should consist of 352.1 hours for Mr. Purcelli and 28.7 hours for Mr. Kravitz computed in this way:

|  | **Mr. Purcelli** | | **Mr. Kravitz** |
|---|---|---|---|
| Time claimed | | 427.6 | 41.2 |
| Deduct, claimed for complaint | 25.1 | | 3.9 |
| Deduct, claimed for points for charge | 28.4 | | 6.4 |
| Deduct, claimed for fee petition | 22.0 | | 2.2 |
| **Total hours deducted** | | -75.5 | -12.5 |
| **Total lodestar hours** | | **352.1** | **28.7** |

## B. Composition of the Lodestar

### 1. Clerical Time

I turn now to routine administrative work – the kind generally performed by a secretary or office clerk. Mr. Puricelli contends the necessities of the case required that he personally do all that was done.[25] This is what he says:

> ". . . this case was placed on an express track. The Court gave weeks to do what others allow to be done in months. Thus, in setting a reasonable fee, courts must examine whether a paralegal, clerk or less-senior attorney could have performed some litigation tasks [under these circumstances]. Here, the circumstances were not usual, the case was not placed in a 60 day discovery period but a two week

---

[24] This reduces Mr. Puricelli's hours to 352.1 (374.1 - 22) and Mr. Kravitz's hours to 28.7 (30.9 - 2.2).

[25] The City has asked that I consider applying a blended rate of $255.00 per hour (15 percent of $300.00) as the appropriate method of adjustment to reflect a reasonable fee based on the nature of the task performed. I have opted to scrutinize the records provided, and based on the description of the activity performed, I have assigned a reasonable fee.

period. The time table set by the Court was much quicker. The Court moved the case along in an orderly and very military fashion. The Court also changed motion practice by not allowing written motions to be filed; instead, the Court required counsel to confer and then contact the Court for a phone conference. In short, the procedure used by the Court itself compelled the trial lawyer to do most if not all work, which method of the Court eliminated the ability to us [sic] an associate or paralegal.

(Doc. 61, pp. 6-7) (citation omitted).

This statement is historically, factually, and logically inaccurate.

First of all, the case was not assigned to me until March 6, 2007, after the plaintiff contends that time was required for client contacts about filing fees, e-mails, arranging meetings and conferences, preparing for a Rule 16 conference, and other non-expert work, a total of 3.4 hours over a four-month period.[26]

Secondly, there was no two-week discovery deadline.  In his Scheduling Information Report dated February 15, 2007, Mr. Puricelli stated, "It is anticipated that Discovery can be completed by June 30, 2007."  It went on to say, "Each counsel *has* collected and continues to collect documents and videos to provide to the other." (Emphasis added).  The report then noted that the case would be ready for trial on October 1, 2007.   Accepting the representations of counsel at our first meeting on March 15, 2007, I told them to exchange existing videos and medical records within two weeks and arrange for the deposition of the plaintiffs and named defendants within three weeks.  (Doc. 10.)   It did not happen.  On April 26, we met again and discussed counsel's discovery plans and with their agreement, I ordered discovery to be completed on May 30, two and one-half months after I first met with counsel and three and one-half months after the defendants filed their answer.  (Doc. 11.)  Thereafter, deadlines were set

---

[26] Specifically, on January 10, 13, 2007; February 14-16, 2007; and March 6, 2007.

and re-set as new information and new ideas came to counsel.  Trial was scheduled for June 4,

2007, postponed to June 18, changed to July 30, and continued to September 10, 2007.[27]  (Docs.

11, 12, 32, 34.)  The intervening time saw trial preparations, e-mails, discovery, client

conferences, legal research, motions and their responses.  Along this interesting path I ruled on

motions *in limine,* granted the City's motion for summary judgment on the plaintiffs' *Monel*

claim, and provided guidance for the identification of an unknown police officer.  In short, my

initial discovery requirement was not two weeks, but two and one-half months which was

extended and re-extended.  To claim the case was on an "express track," whatever that might be,

is belied by the events as they unfolded.[28]

　　　　Thirdly, it is absurd to suggest that the skills of a civil rights attorney, experienced in

dealing in cases involving false arrest, excessive force, and retaliation, were needed to perform

such tasks as "Meet client, obtain therapy notes, review, scan into file," for 0.9 hours on March

27, or the next day, 0.2 hours to "E-Mail to Straws, provided adional [sic] therapy notes just

provieded [sic]."

　　　　Finally, at no time did Mr. Purcelli object to the scheduling orders in this case or advise

the court he was unable to comply with the agreed orders.  When he asked for two continuances

of the trial – one to identify an officer allegedly involved in the incident and one for personal

---

[27] Trial was originally scheduled for June 4, 2007.  On May 30, I continued it to June 18 at the plaintiffs' request to give them additional time to identify a John Doe defendant.  (Doc. 12.)  On June 11, Mr. Purcelli requested an additional continuance saying, "Plaintiffs [sic] counsel is currently inured [sic] with a strained or torn back muscle that required medication to be taken.  The medication caused blurred vision and sleep.  The injury causes severe painful back muscle spasms, and prevent [sic] counsel from walking, sitting and driving.  The injury is anticipated to last several weeks." (Doc. 22, p. 4 n.2.)  Despite the severity of his injury, Mr. Puricelli was able to spend 60 hours in June on this matter alone.  During this time he went to opposing counsel's office, reviewed the defendants' pretrial submissions and responded to them, and prepared two of his clients for trial.  Truly a remarkable conquest of pain, blurred vision, and sleepiness.

[28] In any event, the express track became a siding in July (6.6 hours) and August (3.6 hours).

reasons – his requests were granted.  The trial schedule in this case was consistent with my duty to see that plaintiffs have a full, fair, and timely opportunity to present their grievances.  This trial occurred almost three years after the events that led to this lawsuit.

I recognize, of course, that there may be times when it is more convenient for an attorney to send his own e-mail, make his own telephone call, or note something for the file.  That is not the question; the question is whether he should be paid his top rate by his opponent for doing ho-hum work.  In other words, should the City be compelled to pay for a legal professional to do the work of a functionary.  I find it should not be required to do so.  Between January 10, 2007, and September 15, 2007, Mr. Purcelli claims 13.6 hours and Mr. Kravitz claims 2.2 hours for time spent on e-mails, faxes, filing, scanning, assembling, and conforming.[29]  I shall therefore deduct those hours from their top-billing rates and include them in the lower rate I am allowing for clerical duties, $150 an hour.

### 2.  Trial Time

Trial in this case started on Monday, September 10, 2007, at 10:00 a.m. and concluded with the jury's verdict at 6:25 p.m. on Friday, September 14, 2007.  Counsel does not break his time down by category, he merely gives a total number of hours for each day with an abbreviated description of the various tasks of the day.  I have been left to my own calculations, again based on the record and the material provided, which are reflected in the chart below.

The first column shows the total number of hours submitted by Mr. Purcelli for each trial day.  Next, is the actual time spent in court as shown by the court records.  To that number I have

---

[29] Specifically on January 10, 13, 2007; February 14-16, 2007; March 6, 15, 23, 27, 2007; April 7, 2007; May 11, 15, 22, 28-30, 2007; June 1, 4-5, 7, 11-12, 14, 17, 19, 22-23, 2007; July 10, 22-23, 25-26, 2007; August 31, 2007, and September 6, 15, 2007.

added an additional two hours per day that reasonably reflect the amount of time spent in the courthouse. That number appears in the third column. After deducting column three (in-courthouse time) from the total hours claimed in column one, I have assigned the remaining hours to preparation or waiting time.

| Date | Time claimed | Actual court time | Actual court plus 2 hrs | Preparation time | Waiting time |
|------|--------------|-------------------|-------------------------|------------------|--------------|
| 9/10 | 19.5 | 4.0 | 6.0 | 13.5 | -- |
| 9/11 | 19.5 | 4.5 | 6.5 | 13.0 | -- |
| 9/12 | 19.0 | 5.25 | 7.25 | 11.75 | -- |
| 9/13 | 20.0 | 4.5 | 6.5 | 13.5 | -- |
| 9/14 | 12.0 | 3.5 | 5.5 | -- | 6.5 |
| | 90.0[30] | 21.75 | 31.75 | 51.75 | 6.5 |

Thus, I have done what counsel has not – divided his time by task for the days of the trial, i.e., 31.75 hours in-court, 51.75 hours for out-of-court trial preparation, and 6.5 hours waiting time (for jury deliberations).

### 3. The Hourly Rates

In support of his claim that he is entitled to be paid $400 an hour for 427.6 hours of work, that is $171,040, counsel points out he has been "engaged in litigation" since 1975, a total of 29 years.[31]  (Doc. 56-3, ¶ 3.)  He focuses his practice on employment civil rights, and other labor law

---

[30] One cannot help but be envious of a man who immediately after 18.5 and 16.5 hour days can devote himself to a cause on successive days of 19.5 hours, followed by a 19-hour day and a 20-hour day, and still be able to devote 12 hours on the fifth day to his goal.  I assume counsel does not include in those latter 90 hours, shaving and showering, the need for sustenance, other bodily requirements, and a 60-mile round trip from office to courthouse.  Ah, to be young again.

[31] Are there not 32 years from 1975 to 2007 when this petition was filed?  This is the same 29 years of experience he attested to in his *Bucceroni* fee petition filed May 2, 2006.  (Doc. 95-2, ¶ 3.)  Perhaps 29-years

related matters.  He has been engaged in a "wide spectrum of civil rights issues" (Doc. 56-3, ¶3),

and has "made presentations to professional audiences pertaining on [sic] various civil rights

issues" (Doc. 56-3, ¶ 5).  Based on his experience "in the civil rights areas of law and marker

[sic] area" where he works, he was awarded $400 an hour for trial work and $300 an hour for

non-trial work by District Judge Juan Sánchez (Doc. 56-3, ¶ 6), and again, based on his

"experience in the civil rights area of law and marker [sic] area" where he works, $300 an hour

by Magistrate Judge Jacob P. Hart (Doc. 56-3, ¶ 7).[32]

I conclude that the following hourly rates, alternatively requested by counsel, are

appropriate:  for Mr. Puricelli, $400 an hour for work in court and $300 an hour for trial-

preparation work; and for Mr. Kravitz, $250 an hour.  (Doc. 56-2, p. 13.)  Those rates are suitable

for Mr. Puricelli's trial work and his work as a lawyer, but $150 per hour, as awarded by Judge

Hart, is the proper rate for his clerical work, waiting time, and for Mr. Kravitz's clerical work.

On that basis the lodestar, before adjustment, properly consists of five components,

totaling $112,745:

---

experience was correct in a fee petition filed in 2004, but like it or not, time marches on.

[32] Well, not quite: Magistrate Judge Jacob P. Hart awarded counsel $300 an hour for counsel's work in
court and $150 an hour for his written work, an amount that Judge Hart characterized as being generous.  Judge Hart
also said that some of counsel's work was "careless to the point of being disrespectful" and "nearly unintelligible."
He noted that Judge Stewart Dalzell was "puzzled" by some of counsel's arguments and found others to be "odd."
*Devore v. City of Philadelphia.,* No. 00-CV-3598, 2004 U.S. Dist. LEXIS 3635 (E.D. Pa. Feb. 20, 2004).

| | | | |
|---|---|---|---|
| **Puricelli's lodestar hours** (as allowed on p.15) | **352.1** | | |
| Puricelli's in-court time (as allowed on p. 18-19) | 31.75 | x $400 an hour | $12,700 |
| Puricelli's clerical/waiting time (as allowed on p. 18-19) | 20.1 | x $150 an hour | $3,015 |
| Mr Puricelli's preparation time (352.1 - 31.75 - 20.1) | 300.25 | x $300 an hour | $90,075 |
| **Total Puricelli lodestar fees** | | | **$105,790** |
| **Kravitz's lodestar hours** (as allowed on p. 15) | **28.7** | | |
| Kravitz's clerical work (as allowed on p. 18) | 2.2 | x $150 an hour | $330 |
| Kravitz's preparation time (28.7 - 2.2) | 26.5 | x $250 an hour | $6,625 |
| **Total Kravitz lodestar fees** | | | **$6,955** |
| **Total lodestar fees** | | | **$112,745** |

## II.  ADJUSTMENTS TO THE LODESTAR

I now turn to adjustments in the lodestar amount of $112,745.  I conclude it is necessary
to make further specific reductions for time spent in litigating unsuccessful claims.  *Rode v.
Dellarciprete,* 892 F.2d 1177 (3d Cir. 1990).

Suit was brought here on behalf of four plaintiffs, Michael McKenna, Beth McKenna,
Timothy McKenna, and Patricia Sullivan against the City of Philadelphia, three named
Philadelphia police officers, Andrew Jericho, Mark Stoots, Deborah Kelly, a John Doe officer

who was eventually identified as Jonathan Josie, and a second John Doe officer who was never

identified.  The complaint may be summarized as follows:

| | |
|---|---|
| Count II (the first Count II) | Retaliation<br>All plaintiffs vs. all individual defendants. |
| Count II (the second Count II) | Unreasonable and Excessive Force and Seizure[33]<br>Conspiracy and *Monell* claim<br>All plaintiffs vs. all defendants |
| Count III | Malicious Prosecution<br>Timothy McKenna vs. Officer Andrew Jericho |
| Count IV | State Claims for Assault and Battery, Malicious<br>Prosecution and Abuse of Process, Civil<br>Conspiracy, False Imprisonment and Infliction of<br>Intentional Emotional Distress<br>All plaintiffs vs. all individual defendants |

**A. Dismissed Claims**

On August 15, 2007, I granted the City's motion for summary judgment.  (Doc. 35.)  I

shall therefore deduct time spent opposing this motion in June 2007, as follows:  15.6 hours

claimed by Mr. Purcelli (at the out-of-court rate of $300), and 2.6 hours claimed by Mr. Kravitz,

in opposing the City's motion (at the rate of $250).  However, I will not deduct time in August

2007, spent with the plaintiffs discussing the effect of the ruling.

On September 13, 2007, the fourth day of trial, I granted a motion to dismiss the

malicious prosecution claim and all claims against Captain Deborah Kelly.  (Doc. 50; N.T. 20,

27, 112, Sept. 13, 2007.)  I will deduct one hour of preparation time and one hour of court time

---

[33] Although the title of this count includes a claim for unreasonable seizure, there is no specific mention of unlawful arrest in this count except by reference to the preceding paragraphs of the complaint.  The complaint does not include a separate count asserting the arrest of Timothy McKenna without probable cause; however, the assertion is mentioned throughout the complaint and there was no challenge by the defendants that the claim was not sufficiently pled.

for the preparation and presentation of the malicious prosecution claim.  Having considered the

time spent in deposing Captain Kelly and in court presenting evidence and argument concerning

Captain Kelly, I will also deduct four hours of preparation time and one hour of court time from

Mr. Puricelli's submission.

## B.  Adjustment for Dismissed Claims

|  |  |  | Mr. Puricelli | | Mr. Kravitz |
|---|---|---|---|---|---|
| In-court time (as allowed) |  | 31.75 |  |  |  |
| Deduct time for malicious prosecution claim | 1.0 |  |  |  |  |
| Deduct time for Capt. Kelly claim | 1.0 | - 2.0 |  |  |  |
| **Adjusted in-court time** |  |  | **29.75** |  |  |
| Preparation time (as allowed) |  | 300.25 |  |  | 26.5 |
| Deduct for summary judgment opposition | 15.6 |  |  | 2.6 |  |
| Deduct for unsuccessful malicious prosecution claim | 1.0 |  |  |  |  |
| Deduct for unsuccessful claim against Capt. Kelly | 4.0 | - 20.6 |  |  | -2.6 |
| **Adjusted preparation time** |  |  | **279.65** |  | **23.9** |
| **Clerical work and waiting time** |  |  | **20.1** |  | **2.2** |
| **Lodestar hours after adjustment for dismissed claims** |  |  | **329.5** |  | **26.1** |

Following the reduction in hours for dismissed claims, the adjusted lodestar consists of

following components, totaling $105,115:

| | | | |
|---|---|---|---|
| Puricelli's adjusted in-court time | 29.75 | x $400 an hour | $11,900 |
| Puricelli's adjusted preparation time | 279.65 | x $300 an hour | $83,895 |
| Puricelli's adjusted clerical/waiting time | 20.1 | x $150 an hour | $3,015 |
| **Puricelli's adjusted lodestar fees** | | | **$98,810** |
| Kravitz's adjusted preparation time | 23.9 | x $250 an hour | $5,975 |
| Kravitz's adjusted clerical time | 2.2 | x $150 an hour | $330 |
| **Kravitz's adjusted lodestar fees** | | | **$6,305** |
| **Total adjusted lodestar fees** | | | **$105,115** |

## C.  Adjustment for Unsuccessful Trial Claims

As a result of the trial testimony and my rulings, I submitted to the jury 31 questions

which may be summarized as follows:

- Nos. 1-6    Timothy McKenna vs. Officer Jericho for arrest without probable cause, use of excessive force, and punitive damages.

- Nos. 7-11   Michael McKenna vs. Sergeant Josie for the use of excessive force and punitive damages.

- Nos. 12-16  Michael McKenna vs. Officer John Doe for the use of excessive force and punitive damages.

- Nos. 17-21  Beth McKenna vs. Officer Jericho for the use of excessive force and punitive damages.

- Nos. 22-26  Patricia Sullivan vs. Officer Jericho for the use of excessive force and punitive damages.

- Nos. 27-31  All plaintiffs vs. Officer Jericho and Sergeant Andrew Stoots for retaliation.

The jury found that Timothy McKenna had been arrested by Officer Jericho without

-24-

probable cause and was entitled to $150,000 in damages, but also found that he had not been subjected to the use of excessive force.  In all other respects the jury found in favor of all of the defendants.

Ordinarily counsel fees are only awarded to a plaintiff who has prevailed and only as to the particular claims on which he or she has been successful.  However, where unsuccessful claims arise from the same facts as the successful claims and are based on the same legal theories, attorneys' fees may be awarded for both.  The court should also consider the level of overall relief obtained by the prevailing plaintiff.  On the other hand, where the claims are distinctly different and are based on different facts, counsel's work on one claim will be considered as unrelated to the work on another claim.  "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983).  It is the plaintiff's burden to establish that "the time spent pursuing the unsuccessful claims contributed in any way to [his] success on the remaining claims."  *Lanni v. New Jersey*, 359 F.3d 146, 151 (3d Cir. 2001).

Michael McKenna, Beth McKenna, and Patricia Sullivan were denied any recovery by the jury.  Counsel fees may be awarded for time spent on their claims only if they were so intertwined with Timothy McKenna's claim that they could not be separated, i.e., they all arose from a common core of facts and were based on the same legal theory as Timothy's successful claim.  Counsel has made no reduction in his fee petition to reflect this lack of success.

By way of background:  On January 23, 2005, the four plaintiffs had spent the afternoon at the home of Michael and Beth McKenna watching the Philadelphia Eagles beat the Atlanta

-25-

Falcons for the league championship.  The plaintiffs decided to go down to the 4000 block of

Cottman Avenue where a crowd had gathered to celebrate the Eagles' victory.  They joined the

throng, but after about l5 minutes, decided to leave.  According to the plaintiffs, Timothy

McKenna's arrest occurred as they were making their way out.

Here there is no common core of facts – only a common core of unproven claims.

According to Timothy, as they were departing in single file he was grabbed from behind

and thrown to the ground and held there by a Philadelphia police officer later identified as

Andrew Jericho.

According to the jury it never happened.[34]

Beth McKenna, Timothy's mother, said that she ran over to Timothy when he was being

held to the ground and the officer who was holding Timothy down speared her just below her

sternum with his nightstick.

The jury found the police officer did not use excessive force.

Michael McKenna testified that after he saw his son thrown to the ground, he identified

himself, and he was pushed back and forth by the police officers until he fell to the ground.

The jury found he was not subjected to excessive force.

Patricia Sullivan, Michael McKenna's sister, testified she saw Timothy thrown to the

ground and when she tried to video what was happening, Officer Jericho struck her arm with his

nightstick causing her to fall to the ground.

The jury found Officer Jericho did not use excessive force.

_____

[34] The jury was specifically given an additional instruction on Timothy McKenna that if they found "he was just grabbed out of line by Officer Jericho, that in itself, would be an excessive use of force." (N.T. 42, Sept. 14, 2007.)  The jury found for Officer Jericho on the excessive force count.

Michael McKenna and Beth McKenna testified that when they went to get Timothy released, his paperwork was unduly delayed in retaliation for their trying to video the police proceedings and area.

The jury found there was no improper delay in processing Timothy's paperwork and release.

Obviously, the jury rejected all of the contentions about the use of excessive force and retaliation. It follows that events that did not occur cannot be woven, intertwined, and intermingled with other events that did not occur, or be considered support or corroboration for an event that did not occur, so as to justify an order that counsel fees should be paid for the assertion of unsuccessful claims on behalf of unsuccessful claimants.

As to Timothy McKenna, theoretically a decision is easy – although he succeeded on only one of his three claims, he was quite successful on that one and his counsel should be awarded fees commensurate with their representation of Timothy McKenna. However, how many hours were devoted to Timothy McKenna and how many hours were devoted to the other plaintiffs is not shown in the time records provided by counsel.

It is axiomatic that the burden is on a prevailing party to provide evidence of hours spent on his or her case as contrasted with the hours spent on other tasks for other parties. Here there was no such evidence. Nonetheless, I can glean from the material that is available to me some reasonable approach to a fee award for the services to Timothy McKenna. Of course, a fee award should not be calculated using a simple mathematical approach based on the ratio between a plaintiff's successful and unsuccessful claims. I take it, however, that the realities of time-keeping should not be ignored and although counsel has not done so, I should divide counsel's

total time between the one successful plaintiff and the three who were not.  Accordingly, I conclude that one-fourth of the adjusted lodestar is an appropriate reflection of the time spent on this matter for the representation of Timothy McKenna on his one successful claim.  I do so based on the absence of any record for the total time devoted to the claims of Timothy McKenna alone and counsel's other time listings.  I have compared the time spent on Timothy's deposition as compared the to depositions of the other plaintiffs, the time spent at trial on Timothy's claims as compared to the times spent on those of the other plaintiffs,[35] the total number of plaintiffs and claims, and counsel's success in obtaining a substantial award for Timothy McKenna.  The only other alternatives to this approach would be to award counsel fees for unproven claims, which would be unjust, or to award nothing for the successful claim, which would be unreasonable.

Why one-fourth?  The questionable time records, lack of candor, slip-shod submissions, failure to apportion preparation time for each plaintiff, and the time spent in preparing for and presenting the successful claim and unsuccessful ones could well support a reduction to one-fifth or one-sixth of the adjusted lodestar hours.  In determining that a reduction to only one-fourth is justified, I have taken these factors into consideration, the other factors I have discussed above, and most of all, the amount of counsel's recovery on behalf of Timothy McKenna.

Using the process I have described to separate the one successful claim from the many unsuccessful ones, I conclude that the proper award of counsel fees for the matters I have considered this far is $24,702.50 for Mr. Puricelli and $1,576.25 for Mr. Kravitz, for a total of

---

[35] According to the deposition transcripts, Timothy's deposition lasted 39 minutes, Patricia Sullivan's took 40 minutes, Beth McKenna's was 55 minutes, and Michael McKenna's was by far the longest at 2 hours and 12 minutes.  Thus, less than one-fourth of the total deposition time was devoted to that of Timothy.  Eleven of Timothy's 44-page deposition refer to his unsuccessful claim of excessive force.  (Timothy McKenna Dep.11-22.)  At trial, Timothy's testimony consisted of 56 pages of the 334 total, or about 17 percent, of those devoted to the direct and cross-examination of all four plaintiffs.  (N.T. 127-128, Sept. 12, 2007.)

$26,278.75.

|                                         | Mr. Puricelli | Mr. Kravitz |
|-----------------------------------------|---------------|-------------|
| Lodestar adjusted for dismissed claims  | $98,810       | $6,305      |
| Adjustment for unsuccessful trial claims | x.25          | x.25        |
| **Adjusted lodestar fees**              | **$24,702.50** | **$1,576.25** |

### III.  PLAINTIFF'S REPLY TO DEFENDANTS' FEE PETITION RESPONSE

Next, I consider Timothy McKenna's request for additional fees for replying to the

defendant's response to his fee petition, specifically 18.3 hours for Mr. Purcelli and 4.0 hours for

Mr. Kravitz, broken down by Mr. Purcelli as follows:

| October 2007 |                                                              | TMK | BMP  |
|--------------|--------------------------------------------------------------|-----|------|
| 03           | Review  "defendants" eply to fee petition                    |     | 01.5 |
| 03           | TMK review "defendant's Response Fee Petition                | 1.5 |      |
| 04           | Conference w/TMK re: reply to Defs Response                  |     | 00.5 |
| 04           | Draft response, send to TMK for review                       |     | 10.6 |
| 05           | TMK review of reply                                          | 2.5 |      |
| 05           | Revise/Edit Draft after TMK review                           |     | 04.6 |
| 05           | Client conference re: reply                                  |     | 00.3 |
| 08           | Final review, conform to PDF an file Rep-ly to Defs response |     | 00.8 |
|              | **Total**                                                    | **4.0** | **18.3** |

As it should be, the reply is tailored to the defendant's response to the original fee

petition.  In summary, the reply contends that the hourly rates for Mr. Purcelli and Mr. Kravitz

were not properly contested (Doc. 61, pp. 4-5),[36] the claimed hours should not be reduced for

time spent on unsuccessful claims because the claims were all intertwined (Doc. 61, pp. 3-4), the

---

[36] Mr. Puricelli's hourly-rate claim is supported by an attorney with four-years experience who has been co-counsel with him on other cases.  Her novel approach to the written word, punctuation, and pronouns mark her as an apt and attentive Puricelli pupil (or does she just sign whatever is put under her nose?).  (Doc. 56-5.)

case was on an express track which precluded delegating any work to others (Doc. 61, pp. 6-11), the time records were accurate (Doc. 61, pp. 11-12), there is no basis for the reduction of the lodestar (Doc. 61, pp. 14-15), and prejudgment interest and delay damages should be awarded (Doc. 61, pp. 16-18).

I have already explained why I reduced the number of hours claimed as being reasonable, the first component of the lodestar.  In addition, I have set forth why the plaintiff's contention that this case was on some kind of a fast track is simply not true.  I have stated why there was no intertwining of claims that would justify an award for the hours spent on unsuccessful claims. However, I feel that some further comments dealing with Mr. Puricelli's reply are in order.

First, the City contends that Mr. Puricelli's hourly billing was excessive, pointing to the 22.3 hours claimed on April 12, 2007, and the more than 20 hours claimed for the preparation of jury instructions as examples.  (Doc. 60, pp. 14-15.)

In connection with depositions, Mr. Puricelli submits the following hours for April 12 and April 30:

|  |  | TMK | BMP |
|---|---|---|---|
| Apr 12 | Ptfs dep |  | 04.2 |
| 12 | Prep for defs dep |  | 08.7 |
| 12 | Conference w/ clients and TMK post dep re: |  |  |
|  | deps and def dep strategy | 01.6 | 01.6 |
| 12 | Def Jericho and Kelly's Dep Stoots no show |  | 07.8 |
| 30 | Prep for Stoots and Jericho and Kelly dep |  |  |
|  | (marshal copy and make Dep Exhibit Bks |  | 09.8 |

In reply, Mr. Puricelli argues that the defendant presented no evidence that Mr. Puricelli did not work long hours.  However, the defendant's challenge is that excessive hours were listed for work that can be independently calculated and that the disparity throws into question the accuracy of all Mr. Puricelli's records.

The times claimed for the plaintiffs' depositions and those of Officer Jericho and Captain Kelly differ from the times recorded in the depositions themselves.  The plaintiffs' depositions (totaling 272 pages) took about six hours, not 4.2; those of Officer Jericho and Captain Kelly (totaling 267 pages) took 6.5 hours, not 7.8, and were conducted on April 13 rather than April 12, 2007.  The entries for April 30, which have counsel preparing for depositions of Officer Jericho and Captain Kelly, depositions that had already taken place, throw even more doubt on Mr. Puricelli's record-keeping ability.  Finally, the 119-page deposition of Sergeant Stoots was taken on May 24, but Mr. Puricelli makes no claim for the time it took.[37]  The time and date variances, the fact that a claim is made for deposition preparation after the depositions took place, and the failure to claim for time actually spent suggest post-date whimsy, albeit down to the tenth of an hour, rather than accurate, contemporaneous notations.

I conclude that the submission that purportedly shows the hours spent by counsel in April 2007 is not reliable and that it casts doubt on all of Mr. Puricelli's time records.

Second, in Mr. Puricelli's reply to the City's response he asserts, as he had in his original memorandum of law, that a fee award need not be proportional to the amount of damages plaintiff has recovered.  The City did not contend that it should be.

Third, the plaintiff misunderstands the City's contention that an award of attorneys' fees should be reduced for the time spent on unsuccessful claims.  I have already dealt with and rejected the contention that the unsuccessful claims of Michael McKenna, Beth McKenna and Patricia Sullivan were intertwined with Timothy's one successful claim.  Mr. Purcelli also argues

---

[37] For the other depositions, a starting and ending time is stated and thus I can calculate the correct time with some degree of certainty for each deposition.  Based solely on total pages for the three-days of depositions, I estimate the deposition for Sergeant Stoots took about three hours.

that there should be no reduction in the time spent in prosecuting all the claims of Timothy

McKenna's even though he was only successful on one of them.  I disagree.  The claims for

malicious prosecution, retaliation, supervisory liability against Captain Kelly, and punitive

damages were all based on different facts and different legal theories than those on which the

jury found that Timothy had been arrested without probable cause.  *See Hensley,* 461 U.S. at 434-

35.

 Fourth, in order to sustain his claim that he should be paid at the rate of $400 an hour for

all his work and that Mr. Kravitz should be paid $250 an hour for his work, Mr. Purcelli

introduces a series of *non sequiturs*.

- The defense asked for a continuance which was not granted.  (p. 2)

- The defense accused the plaintiffs' family with jury tampering.  (p. 3)

- I  failed to charge the jury on certain claims asserted by the plaintiffs.  (pp. 3-4)

- The claims of plaintiff's counsel should not be reduced because defense counsel also made errors.  (p. 5)

- Defense counsel was aware that Mr. Kravitz was assisting Mr. Puricelli.  (p. 7)

- Defense counsel failed to meet court-imposed deadlines.  (p. 8)

- The damages awarded by the jury to Timothy McKenna exceeded that for which all the plaintiffs would have been willing to settle.  (pp. 14, 16)

- "It is of no moment that Timothy McKenna did not win every claim, because he would only have been entitled to recover one money award had he won every claim."  (p. 16)

(Doc. 61.)

 Finally, there are other errors, minor in nature, in the plaintiff's reply:

- Plaintiffs requested two continuances of trial, not one.  (pp. 2-3)

- Plaintiff is wrong when he states I did not read to the jury "some" of his proposed

instructions.  (p. 3)  They were so bad I read none of them to the jury (any similarity is merely coincidental).

• Timothy McKenna's recovery was not for being subjected to excessive force.  (p. 14)

• Plaintiff cites *Ridley v. Costco Wholesale Corp.,* 217 Fed. Appx. 130 (3d Cir. 2007), a non-precedential opinion, when *Washington v. Philadelphia Court of Common Pleas,* 89 F.3d 1031 (3d Cir. 1996), could have been cited (and was actually quoted in *Ridley*). (pp. 5-6)

(Doc. 61.)

In summary, Timothy McKenna asks that I require Officer Jericho, really the City, to pay a total of $8,320 for 22.3 hours devoted to this reply.  I refuse to do so.  However, I will order the payment to Mr. Puricelli for three hours of preparation time at the rate of $300 an hour.  I make this decision based on the number of hours listed by counsel, the dubious nature of Mr. Puricelli's time records, the lack of success in replying to assertions made by the defendant, the reply's factual errors, the unnecessary argument about proportionality, and the spelling and grammatical mistakes.[38]  I award Mr. Kravitz nothing for his review of the reply.  Thus, the total fee awarded to Mr. Puricelli is $25,602.50 and to Mr. Kravitz is $1,576.25, a total of $27,178.75.

## IV.  BILL OF COSTS

Counsel has also submitted a statement of costs.  I make no ruling as to them as costs are to be taxed by the Clerk of Court.  *Local Rule 54.1(b)*.

## V.  PREJUDGMENT INTEREST

Timothy McKenna also seeks prejudgment interest.  Prejudgment interest is not awarded as a matter of right but is left to my discretion.

---

[38] Though it is sprinkled with errors, this memo is so superior in spelling, punctuation, citations, quotations, and grammar to the fee petition and its memorandum of law, the complaint, and the points for charge, that it is almost punctilious to wonder how one "posies a question."   (Doc. 61, p. 17.)

Prejudgment interest is commonly awarded in employment discrimination cases to compensate a successful plaintiff who has been awarded back pay. A court does so to compensate for the loss of the use of money the plaintiff would have otherwise earned had there ben no unlawful discharge.

Under Pennsylvania law, prejudgment interest may also be awarded where there has been bodily injury, death, or property damage.[39]

I conclude prejudgment interest is not appropriate here for the following reasons: 1) this is not an employment case nor one in which there was bodily injury; 2) Timothy McKenna did not suffer the loss of the use of any funds; 3) Timothy McKenna's recovery, $150,000, is more than adequate to compensate him for being arrested without probable cause; 4) it would be manifestly unfair to Officer Jericho (or to the City which will pay the award) to add anything to Timothy's recovery; and 5) there was no delay in the prosecution of this matter. The complaint was filed on January 10, 2007, and the jury returned its verdict eight months and five days[40] later, September 14, 2007.

## VI.  DELAY DAMAGES

Delay damages may be awarded when an undue length of time elapses between the entry of judgment and its satisfaction. I have not been given any information in that regard and therefore can make no award.

An appropriate order follows.

---

[39] Although state claims were brought on behalf of Timothy there was no specific state charge of false arrest. I merely mention state law in the event that the complaint is given an overly-generous interpretation.

[40] Yes, five days. The eighth month since the filing of the complaint ended on September 9.

-34-

## VII.  POSTSCRIPT

A long time ago in a galaxy far, far away, each lawyer knew he and she could not nail any old slap-dash parchment to the church door and expect someone else to pay for it.   Most lawyers who practice in this court also know that.

They all should.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL MCKENNA, et al.** | : | **Civil Action** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | **No. 07-110** |

## <u>O R D E R</u>

AND NOW, this   30th   day of September, 2008, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for counsel fees in the amount of $181,340.00 is denied but counsel fees in the following amount are awarded: to Brian M. Purcelli, Esquire, $25,602.50 and to Theodore M. Kravitz, Esquire, $1,576.25, for a total of $27,178.75.

2.  Plaintiff's request that I award costs is deferred to when and if it becomes necessary that I rule on it pursuant to *Local Rule 54.1(b)*.

3.  Plaintiff's request for prejudgment interest is denied.

4.  Plaintiff's request for delay damages is denied.


BY THE COURT:


/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., J.